IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**CHURCH MUTUAL INSURANCE COMPANY**      **PLAINTIFF**

V.                          4:09CV00487 JMM

**HAROLD R. COPENHAVER, JEFF W. O'DONNELL,**
**and UNITED INSURANCE AGENCY INC.**      **DEFENDANTS**


**ORDER**

Pending is the Defendants' Motion for Partial Summary Judgment. Defendants contend that the non-compete clause at issue in this case is unreasonable in its purpose, scope and duration. The Plaintiff has responded and the Defendants have filed a reply. For the reasons set forth below, the motion is GRANTED.

I.   Facts

This dispute began when Harold Copenhaver and Jeff O'Donnell left their employment with Church Mutual Insurance Company in November 2007. Plaintiff Church Mutual Insurance Company ("Church Mutual") specializes in providing property and casualty insurance policies to churches and religious institutions. Defendants Harold Copenhaver and Jeff O'Donnell are former Church Mutual sales representatives. After leaving Church Mutual, they began working for Defendant United Insurance Agency ("UIA"). It is undisputed that Copenhaver and O'Donnell have sold insurance policies to churches while employed at UIA. As a result, the plaintiff, Church Mutual, brought an action against the defendants, Harold Copenhaver, Jeff O'Donnell, and UIA.

Harold Copenhaver originally worked for Church Mutual from September 12, 2001, to

August 8, 2003.  Copenhaver rejoined Church Mutual from February 2005 through May 2007, and he was assigned to Sales Territory 67, which encompassed 18 Arkansas counties.  In May 2007, Copenhaver was reassigned to a new sales territory with fewer counties.  Copenhaver claims he lost approximately $200,000 per year in book value as a result.  It is disputed whether Church Mutual made the change unilaterally or discussed it with sales representatives.  Copenhaver left Church Mutual on November 2, 2007.

Jeff W. O'Donnell first worked at Church Mutual as a sales representative from August 5, 1991 to December 31, 1995.  He rejoined Church mutual in February 1997.  O'Donnell was assigned to Sales Territory 140 which encompassed 17 Arkansas counties.  He was the only Church Mutual sales representative assigned to the area.  In May 2007, O'Donnell's sales territory was changed, and he claims that he lost approximately $500,000 in book value as a result.  O'Donnell argues the change was unilaterally made by Church Mutual. Church Mutual, however, counters that the change was only made after consulting with sales representatives.  O'Donnell left Church Mutual on November 16, 2007.

Church Mutual's primary insurance product is a multi-peril policy that is usually sold as a three year policy.  Its sales representatives maintain one or more exclusive territories where they provide in person contact with customers.  Church Mutual provided its Arkansas sales representatives with a list of 2,013 current Arkansas customers and 5,383 prospects.  Church Mutual alleges it has lost thirty-seven accounts to UIA since O'Donnell and Copenhaver began working there.  UIA's premiums attributable to churches has grown from approximately $300,000 to $1,500,000 since O'Donnell and Copenhaver joined.

The relevant provision in Copenhaver and O'Donnell's contract with Church Mutual is as

follows:

> Employee agrees that he/she will not sell or solicit property and casualty insurance to churches and other religious institutional properties for a period of three years within the geographic territory being serviced by the Employee at the time of termination of this agreement or in any territory serviced by him/her within three years prior to his/her termination.

II.     Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e*., '[to] point out to the District Court,' that the record does not

> disclose a genuine dispute on a material fact. It is
> enough for the movant to bring up the fact that the
> record does not contain such an issue and to identify
> that part of the record which bears out his assertion.
> Once this is done, his burden is discharged, and, if
> the record in fact bears out the claim that no
> genuine dispute exists on any material fact, it is
> then the respondent's burden to set forth affirmative
> evidence, specific facts, showing that there is a
> genuine dispute on that issue. If the respondent
> fails to carry that burden, summary judgment
> should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) (brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

   III.   Discussion of the Law

"Under Arkansas law, the party challenging the validity of a covenant not to compete has the burden to show that it is unreasonable." *Dawson v. Temps Plus, Inc.*, 987 S.W.2d 722, 726 (Ark. 1999). The validity of non-compete agreements depends upon the facts and circumstances of each particular case. *Evans Laboratories, Inc. v. Melder*, 562 S.W.2d 62 (Ark. 1978). These agreements are not looked upon favorably by the courts and will not be enforced when they merely prohibit ordinary competition. *Bendinger v. Marshalltown Trowell Co.,* 87 S.W.3d 232 (Ark. 2002). In order for a non-compete covenant to be enforceable under Arkansas law, three requirements must be met: (1) the covenantee must have a valid interest to protect; (2) the geographical restriction must not be overly broad; and (3) a reasonable time limit must be imposed." *Owens v. Penn Mut. Life Ins. Co.,* 851 F.2d 1053, 1054 -1055 (8th Cir. 1988) (citing *Duffner v. Alberty*, 718 S.W.2d 111, 112 (Ark. App. 1986); *Rebsamen Ins. v. Milton*, 600 S.W.2d

441 (Ark. App. 1980)).  "Covenants not to compete in employment contracts are subject to stricter scrutiny than those connected with a sale of a business." *Freeman v. Brown Hiller, Inc.*, 281 S.W.3d 749, 754 (Ark. App. 2008).

"Arkansas courts have struggled with the concept of whether a covenant not to compete, executed by an employee or agent involved in sales, is too broad." *Freeman*, 281 S.W.3d at 755. "The test is whether the restraint imposed is no greater than is reasonably necessary for the protection of the covenantee and not so great as to injure a public interest." *Evans Laboratories, Inc. v. Melder*, 562 S.W.2d 62, 64 (Ark. 1978).

### A. Valid Interest

In the instant case, the Court finds that Church Mutual has a valid interest to protect. Protection of customers can be a legitimate interest, because the most important assets of most businesses are the customers. *Girard v. Rebsamen Ins. Co.*, 685 S.W.2d 526, 528 (Ark. App. 1985) (quoting *Borden, Inc. v. Huey,* 547 S.W.2d 760, 761 (Ark. 1977)).  Church Mutual has a significant customer base and a valid interest in retaining its customers.  The Defendants were the face of the company in their sales territories and spent several years cultivating relationships with their customers.  *See Freeman,* 281 S.W.3d 749, 751.

The scope of the non-compete agreement, however, is broader than reasonably necessary to protect Church Mutual's valid interest.  The scope of the covenant extends to not only customers, but also non-customers. "A covenant that seeks to prevent unfair competition by a former agent who has built up personal relationships with customers must be narrowly tailored to apply only to the customer base that the covenantee has a legitimate interest in protecting." *Sensabaugh v. Farmer's Ins. Exch.,* 420 F.Supp. 2d 980, 986 (E.D. Ark. 2006).  A covenant may

be unreasonable if it restricts activities that are unnecessary to protect the covenantee. *See Freeman,* 281 S.W.3d at 754 (citing *Easley v. Sky, Inc.*, 689 S.W.2d 356 (Ark. App. 1985).

Unlike the restrictions in *Girard* and *Sensabaugh* the covenant not to compete in the Church Mutual contract is not limited to current or previous customers. In *Girard*, the non-compete prohibited the sales agent from accepting business from customers whose accounts the employee had serviced while working for his former employer. 685 S.W.2d at 528. The court in *Sensabaugh* held a non-compete clause that prohibited Mr. Sensabaugh from soliciting or accepting business from Farmers' customers was valid. 420 F.Supp. 2d at 987.

Here, the language of the restriction extends to all churches and religious institutions. By protecting non-customers the non-compete exceeds the scope of what is reasonable to maintain those interests. Even though a valid interest exists in Church Mutual's customers, its covenant not to compete goes further by protecting prospective interests in the form of potential customers. In doing so, it restricts actions that are unnecessary to protect Church Mutual. Because the non-compete is not narrowly tailored to apply only to the interests the Church Mutual has a legitimate interest in protecting, it is invalid.

Further, the agreement does not define "religious institutions." Religious institutions could extend the covenant not to compete to schools, hospitals, and nursing homes. The non-compete and the surrounding facts show a valid business interest existed for Church Mutual to protect its customers. Arkansas Courts limit the restrictions in a non-compete to protect only the valid business interests of the employer. *Quality Liquid Feeds, Inc. v. Plunkett*, 199 S.W.3d 700, 703 (Ark. App. 2004). Here, because Church Mutual's covenant not to compete misses by an inch by protecting non-customers, it misses by a mile. No matter how close a non-compete

agreement is to being valid, Arkansas courts will not rewrite the contract. *Rector-Phillips-Morse, Inc. v. Vroman*, 489 S.W.2d 1, 5 (Ark. 1973); *Quality Liquid Feeds*, 199 S.W.3d at 704; *Federated Mut. Ins. Co., v. Bennett*, 818 S.W.2d 596, 599 (Ark. App. 1991). Further, courts will not "enforce a contract to the extent it may be considered reasonable." *Quality Liquid Feeds,* 199 S.W.3d at 704 (citing *Bendinger*, 994 S.W.2d 468 (Ark. 1999).

### B. Time Restriction

The non-compete agreement restricts the Defendants for three years after the termination of their employment. Courts have upheld two-year restrictions that had valid explanations for the duration. *See All-State Supply, Inc. v. Fisher*, 483 S.W.2d 210, 212 (Ark. 1972); *Girard v. Rebsamen Ins. Co.*, 685 S.W.2d 526, 528 (Ark. App. 1985). However, Arkansas courts are "highly suspect" that employment contracts containing a covenant not to compete duration of over two years are against public policy. *Stubblefield v. Siloam Springs Newspapers, Inc.,* 590 F.Supp 1032, 1035 (W.D. Ark. 1984). The Arkansas courts have found non-competes unreasonable where they have included a three year time restriction. *See, e.g., Rector Phillips-Morse, Inc. v. Vroman*, 489 S.W.2d 1, 2 (Ark. 1973).

Church Mutual does not have a training program or other established standard for justifying the three year restriction. Plaintiff argues the restriction is reasonable because its primary insurance product is a three year policy. Under Arkansas law, however, the policy duration is not determinative. There must be some valid explanation, rather than reducing competition, to justify the three year restriction. Therefore, the Court finds the three-year duration of the covenant not to compete to be unreasonably long.

### C. Geographic Restriction

"The geographic area in a covenant not to compete must be limited in order to be enforceable." *Jaraki v. Cardiology Assoc. of Ne. Arkansas, P.A.*, 55 S.W.3d 799, 804 (Ark. App. 2001). The trade area of the employer is viewed to determine whether the geographic limitation is reasonable. *Id.*

O'Donnell and Copenhaver are only limited to selling insurance in areas where Church Mutual had a trade interest. The geographic restriction is reasonably tailored because it only applies to areas where employees worked at the time of their termination or areas they had worked in previous years. Geographically, the covenant not to compete between Church Mutual and O'Donnell and Copenhaver is valid.

IV. Conclusion

In conclusion, the covenant not to compete is invalid. Under Arkansas law, it exceeds the scope of what is required to protect valid business interests and contains an unreasonable duration. For the reasons above, Defendants' motion for partial summary judgment, docket number 37, is GRANTED.

IT IS SO ORDERED this 24th day of May, 2010.

_____
James M. Moody
United States District Judge